IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

DAVID L. HAMILTON,

        Plaintiff,

v.                                                No. CIV-O3-0010 BB/LFG-ACE

RATON GAS TRANSMISSION CO.,
RATON GAS MARKETING COMPANY,
JACK PERYATEL, IRIS PERYATEL, and
PATRICIA LINK,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court for consideration of Defendants Raton Gas Transmission Co., Jack Peryatel and Iris Peryatel's Motion for Order Staying Proceeding Pending Administrative Action, filed February 3, 2003 (Doc. 19). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be DENIED.

**I. BACKGROUND**

Plaintiff David L. Hamilton ("Plaintiff") alleges that he purchased stock in Raton Gas Transmission ("RGT") and Raton Gas Marketing Company ("RGM") through a Stock Sale Agreement. He seeks injunctive and declaratory relief requiring Defendants Raton Gas Transmission, Raton Gas Marketing Company, Jack Peryatel, Iris Peryatel and Patricia Link (collectively "Defendants") to register Plaintiff as a shareholder in RGT and RGM with all accompanying rights and information.

Plaintiff and his wife are the sole shareholders of Natural Gas Processing Co. ("NGP"), a Wyoming corporation involved in the transmission and distribution of natural gas. NGP is a "public utility" as defined by Section 62-3-3(G) of the New Mexico Public Utility Act ("PUA"), NMSA 1978, §§ 62-3-1 to 62-15-33, that provides retail gas service to customers in several New Mexico communities. As a controlling owner of NGP Plaintiff is both an "affiliated interest" and a "public utility holding company" pursuant to the PUA. NMSA 1978, §§ 62-3-3(A), 62-3-3(M).

On October 11, 2001 Plaintiff entered into a Stock Sale Agreement with Glenn Hatfield, Jr. for the purchase of his stock in Defendants RGT and RGM, and a third affiliated company denominated Raton Natural Gas Company ("RNG"). RGT, RGM, and RNG are distinct but related corporate entities. RGT owns an interstate pipeline that delivers gas to the Raton area; RGM is an inactive Texas corporation; and RNG is a New Mexico corporation that owns and operates gas distribution facilities and provides retail gas services in the Raton area. Plaintiff acquired 36.4% of the common stock in each of these companies from Mr. Hatfield in a single transaction for a lump sum of money. The remaining 63.6% of the common stock is owned by Defendants Jack Peryatel, Iris Peryatel, and Patricia Link, as well as Penny Peryatel, a third party.

RNG is a "public utility" regulated by the New Mexico Public Regulation Commission ("NMPRC") pursuant to the PUA. *See* NMSA 1978, §§ 62-3-3(G), 62-6-4(A). Therefore, because Plaintiff is considered a "public utility holding company," prior approval is required by the NMPRC before he acquires stock in a public utility such as RNG. *See* NMSA 1978, § 62-6-12. In an apparent attempt to comply with this condition, Plaintiff structured the purchase such that Mr. Hatfield executed a "Special Durable Power of Attorney" to Plaintiff for the RNG stock. According to Plaintiff, the purpose of this document was to enable Plaintiff to recover his

2

investment in the event that the NMPRC did not approve the transfer of RNG stock.

In addition, Mr. Hatfield endorsed the stock certificates and executed an assignment and transfer for the RGT and RGM stocks.  Defendants received Stock Certificates for Mr. Hatfield's holdings in RGT and RGM along with a request from Plaintiff to issue new stock certificates in his name on October 18, 2002.  Notwithstanding this request, however, Defendants have declined to issue certificates for the RGM and RGT stock to Plaintiff.  They contend that the sale of stock in all three companies was a single transaction, and that the entire transaction is void due to lack of prior NMPRC approval for the acquisition of RNG stock.  *See* NMSA 1978, § 62-6-12.

Finally, on October 17, 2001 Plaintiff filed an application with the NMPRC seeking approval of his purchase of stock in RNG and an accompanying "General Diversification Plan" required by regulations pursuant to the PUA.  *See* 17.6.450.10 NMAC.  That case, which was assigned NMPRC Utility Case No. 3832, is progressing through the NMPRC.  A trial on the merits is scheduled for October 14, 2003 to determine whether Plaintiff's acquisition of stock in RNG is "void and of no effect" or whether and under what conditions it will be allowed to proceed.  NMSA 1978, § 62-6-12(B).  In a procedural order in Utility Case No. 3832 the NMPRC took notice of the case and issues before this Court.  *See* Utility Case No. 3832, Second Procedural Order at 7 (May 14, 2003).  Although the NMPRC indicated a willingness to consider an expansion of the scope of Case No. 3832 upon motion of a party, it was clear that it did not consider the RGT and RGM stock acquisition within the scope of its proceeding.  *Id*.  No motion was made in Case No. 3832 to expand the scope.

In the present Motion, Defendants seek an order staying discovery and all proceedings in the matter pending before this Court until the completion of the administrative action by the

NMPRC in Case No. 3832. Defendants contend that a finding by the NMPRC that the acquisition of the RNG stock was void would render Plaintiff's claims moot. According to Defendants, because the RGT, RGM, and RNG stock were sold in a single transaction, a finding by the NMPRC that the purchase of the RNG stock was void would equate with a finding that the entire transaction, including the purchase of the RGT and RGM stock, was void. This same reasoning provides the basis for Defendants' defense in the present matter for refusing to issue certificates for the RGT and RGM stock to Plaintiff. Defendants therefore urge the Court to exercise its discretion and stay the present matter to allow the NMPRC to utilize its administrative expertise in the area of public utilities, and avoid potentially conflicting rulings. For the reasons discussed in more detail below, however, the Motion to Stay is denied because the NMPRC lacks jurisdiction over the RGT and RGM stock, and the entirety or divisibility of the contract is an issue for the parties to that contract.

## II. DISCUSSION

Whether to grant a stay is a matter within the discretion of the trial court. *See, e.g., N. Donald & Co. v. American United Energy Corp.*, 746 F.2d 666, 671 (10th Cir. 1984); *Southern Pacific Co. v. Klinge*, 65 F.2d 85, 87 (10th Cir. 1933). As discussed below, this Court does not find sufficient cause to exercise its discretion to stay the present matter.

**A.    A stay is not warranted under the related doctrines of exhaustion of remedies or primary jurisdiction because the NMPRC lacks jurisdiction over RGT and RGM, and the divisibility or entirety of a contract is a matter for the buyer and seller.**

A stay is not justified under either of the related doctrines of exhaustion of remedies or primary jurisdiction.

4

### 1.   Exhaustion of Remedies.

Defendants initially argue that a stay is warranted under the closely related doctrines of exhaustion of administrative remedies and primary jurisdiction. The United States Supreme Court explained the limits of these related doctrines as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion or administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pacific R. Co.*, 352 U.S. 59, 63-64 (1956)(citations omitted). The Tenth Circuit Court of Appeals has confirmed that "[t]he exhaustion doctrine applies where the agency *alone* has exclusive jurisdiction over the case (generally premised on the exercise of the agency's expertise), whereas primary jurisdiction applies where *both* a court and an agency have the legal capacity to deal with the issue." *Mountain States Natural Gas Corp. v. Petroleum Corp. of Texas*, 693 F.2d 1015, 1019 (10th Cir. 1982) (emphasis in original). As Defendants concede, this Court does have jurisdiction to order Defendants to grant the relief Plaintiff seeks. For this reason, the exhaustion doctrine does not apply, and this Court need only consider Defendants' argument based on the doctrine of primary jurisdiction.

### 2.   Primary Jurisdiction

"Primary jurisdiction is invoked in situations where the courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which,

under a regulatory scheme, have been placed in the hands of an administrative body." *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1376 (10th Cir. 1989).  Under this doctrine "the judicial process is suspended pending referral of the issues to the administrative body for its views." *Id.* at 1377.  The Tenth Circuit Court of Appeals has noted several factors relevant to the application of the doctrine, including (1) whether the issues of fact are within the conventional experience of judges, (2) whether the issues of fact require the exercise of administrative discretion, (3) whether the issues require uniformity and consistency in the regulation of the business entrusted to a particular agency, (4) how agency action will aid litigation, (5) whether the dispute requires continuing supervision by an agency, (6) whether the issues are unique to regulated industries, and (7) whether proceedings already are pending before an agency.  *See id.*; *Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir. 1993).

     Defendants' primary jurisdiction argument is based on the premise that the RGT, RGM and RNG stocks were all purchased in a single transaction.  They claim that because all three stocks were sold in a single transaction, a finding by the NMPRC that the purchase of the RNG stock was void would also render void the purchase of the RGT and RGM stock.  It follows, Defendants reason, that this Court should stay the present matter in order to avoid conflicting results and to permit the NMPRC to act on the RNG stock, a matter uniquely within its jurisdiction.

     Defendants, thus, attempt to bootstrap the validity of the transfer of the RGT and RGM stock to the legality of Plaintiff's acquisition of RNG stock.  In other words, Defendants seek to benefit legally from the structure of Plaintiff's contract as a single transaction.  A third party with no privity of contract, however, has no legal right to enforce or challenge the validity of an

agreement. *See Casias v. Continental Cas. Co.*, 960 P.2d 839, 842 (NM Ct. App. 1998) ("One who is not a party to a contract cannot sue to enforce it"); *Staley v. New*, 250 P.2d 893, 894 (NM 1953) ("It is the general rule of law that one who is not a party to a contract cannot maintain a suit upon it"). *See also Woo v. Irving Tenants Corp.*, 714 N.Y.S.2d 276 (N.Y. App. Div. 2000) (buyer of shares in a cooperative was not a party to, and could not enforce seller's lease); *Killian v. Millard*, 279 Cal. Rptr. 877 (Cal. Ct. App. 1991) (one not a party to a contract cannot challenge it). Instead, the entirety or divisibility of a contract is a matter for the parties to that contract. Defendants cite no authority, and the Court is aware of none, permitting a third party with no privity of contract to challenge a private agreement because part of it is found to be void. Rather, whether a bargain will go forward where part of it has been invalidated is a matter between the buyer and the seller. Thus, if the NMPRC invalidates Plaintiff's acquisition of the RGM stock in the present matter, Plaintiff and Mr. Hatfield would be forced to evaluate their options. As parties to the agreement they could choose to follow through on the bargain for the RGT and RGM stock, seek to renegotiate, or challenge the validity of the entire agreement as indivisible. Because Defendants are third parties with no privity of contract, they do not have these options.

As a result, the Court does not view the structure of the stock purchase as a single transaction, or any potential NMPRC action on the RNG stock in Case No. 3832 as an impediment to the present matter. Rather, the relevant question under the primary jurisdiction doctrine is whether the NMPRC has authority to invalidate the transfer of the RGT and RGM stock.

It is axiomatic that "the scope of the [NMPRC's] jurisdiction is defined by statute."

*United Water New Mexico, Inc. v. New Mexico Pub. Util. Comm'n*, 910 P.2d 906, 274 (N.M. 1996). A review of the statutory scheme reveals that the NMPRC has limited authority over Plaintiff's acquisition of the RGT and RGM stock. Defendants correctly point out that Plaintiff is both an "affiliated interest" of NGP and a "public utility holding company" as defined by the PUA. NMSA 1978, §§ 62-3-3(A), 62-3-3(M). Based on this, Defendants offer two sources for NMPRC jurisdiction over Plaintiff's purchase of Mr. Hatfield's stock. First, Defendants argue that prior NMPRC approval for the purchase of the RNG stock was required because Plaintiff is a public utility holding company. *See* NMSA 1978, § 62-6-12(B). However, this argument fails to address the NMPRC's authority over the RGT and RGM stock. It relies instead on the structure of Plaintiff's bargain with Mr. Hatfield as a single transaction. As discussed above, it is improper for Defendants to attempt to use the transfer of the RNG stock as a lynchpin to the legal analysis of Plaintiff's acquisition of the RGT and RGM stock. Defendants' reliance on Section 62-6-12(B) is, therefore, misplaced.

    Next, Defendants direct the Court's attention to Section 62-6-19 and the accompanying administrative rules. Section 62-6-19 provides the NMPRC with authority to investigate Class II transactions or their resulting effect to determine whether they have an adverse and material effect on utility rates and service. *See* NMSA 1978, § 62-6-19. A Class II transaction is defined, in relevant part, as the formation of a public utility holding company by an affiliated interest of a public utility. *See* NMSA 1978, § 62-3-3(K)(1). Plaintiff does not dispute that his purchase of RNG is a Class II transaction. Under NMPRC regulations Plaintiff must, consequently, obtain prior NMPRC approval of a General Diversification Plan before acquiring stock in a public utility such as RNG. 17.6.450 NMAC. In addition to describing the proposed Class II transaction and

its anticipated effect, the regulations require a General Diversification Plan to identify all of the affected utility's affiliates and disclose their structure and financing. *Id.* This is relevant because RGT and RGM are affiliates of RNG. As a result, the NMPRC will review the corporate structure and financing of RGT and RGM in deciding whether to approve Plaintiff's General Diversification Plan and acquisition of RNG stock. The ultimate decision to be made by the NMPRC is whether to approve or deny Plaintiff's acquisition of RNG stock. This decision has no bearing, however, on Plaintiff's purchase of the RGT and RGM stock.

Two additional details are noteworthy. First, as discussed above, the NMPRC is aware of the matter pending before this Court. In a procedural order in Case No. 3832 the NMPRC made it clear that it did not consider Plaintiff's acquisition of the RGT and RGM stock within the scope of its proceeding. *See* Utility Case No. 3832, Second Procedural Order at 7 (May 14, 2003). Second, in their brief, Defendants concede that "[t]he Public Utility Act does not give the NMPRC direct jurisdiction over RGT and RGM, as it does with respect to RNG. The [NMPRC] cannot order RGT and RGM to issue stock certificates to Plaintiff, as this Court may do." Memorandum of Defendants Raton Gas Transmission Co., Jack Peryatel and Iris Peryatel in Support of Motion to Stay Proceedings Pending Administrative Action at 13 (filed Feb. 25, 2003) (Doc. 20). The necessary corollary to this concession is that the NMPRC also lacks jurisdiction to prevent the transfer of RGT and RGM stock to Plaintiff.

Finally, after reviewing the statutory scheme of the PUA, the Court is unaware of authority that would permit the NMPRC to invalidate Plaintiff's purchase of the RGT and RGM stock. In essence, the matter before this Court and the RNG matter before the NMPRC in Case No. 3832 present related but distinct issues. The question of Plaintiff's purchase of the RGT and

9

RGM stock before this Court does not require the resolution of issues that are properly before the NMPRC.  Furthermore, the matter presently before this Court does not require a consideration of the best interests of the State of New Mexico with regard to public utilities.  *See* NMSA 1978, § 62-6-4.  Rather, it is a contract matter clearly within the conventional experience of judges.  *See Mical Communications, Inc.*, 1 F.3d at 1038.  Moreover, a resolution of Case No. 3832 by the NMPRC will not be determinative of the issues in the matter before this Court.  *See, e.g., Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo. 1996) (stay not warranted where administrative decision would not be dispositive of plaintiff's claim); 17 C.J.S. *Continuances* § 24 (2003) ("Where the issue in the principal case would remain open regardless of the ultimate ruling in the other action, a continuance should be denied").  Accordingly, the Court finds the doctrine of primary jurisdiction to be inapplicable.

**B.    A stay is not warranted under the ripeness doctrine because the complaint presents a current case or controversy.**

Defendants' final argument is that the suit is nonjusticiable because the issue is not yet ripe for adjudication.  The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n. 18, (1993).  Accordingly, ripeness can be raised at any time. *Norvell v. Sangre de Cristo Dev. Co.*, 519 F.2d 370, 375 (10th Cir.1975).

The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the

10

challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 105 (1977). Thus, the typical situation in which a suit is found unripe under *Abbott* is one in which a party requests judicial review of an agency action. *See, e.g., Mobil Exploration & Producing U.S., Inc. v. U.S. Dept. of Interior*, 180 F.3d 1192 (10th Cir. 1999). That situation is not present here. Here there is no danger of this Court entangling itself in a matter properly before the NMPRC because the NMPRC lacks jurisdiction over the RGT and RGM stock. The parties in the present matter are faced with a concrete dispute that is ripe for review by this Court.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that a stay is not warranted, and the present matter shall proceed.[1]

### IV.  ORDER

**IT IS ORDERED** that Defendants Raton Gas Transmission Co., Jack Peryatel and Iris Peryatel's Motion for Order Staying Proceeding Pending Administrative Action (Doc. 19) be DENIED.

**DATED** at Albuquerque this 10th day of October, 2003.

                                                                    _____
                                                                    BRUCE D. BLACK
                                                                    United States District Judge

---

[1] The Court recognizes that several of the issues addressed in this opinion are also raised in Plaintiff's Motion for Summary Judgment (filed June 2, 2003) (Doc. 51) and Defendants' Response (filed June 25, 2003) (Doc. 56). The Court reserves judgment on the Motion for Summary Judgment, but it is willing to entertain filings addressing interstitial issues raised in this Order that are submitted within 30 days.

**Attorneys:**

For Plaintiff:

    Mercedes Fernandez-Wells, Ruidoso Downs, N.M.

For Defendants:

    Kenneth L. Harrigan, Lynn H. Slade, and Erin E. Langenwalter, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M.